Good morning, and may it please the court, my name is David Porter. I'm an assistant federal defender from the Eastern District of California, and I represent the cross-appellant Heriberto Sicairos-Quintero. There are two issues in this case. The first issue is whether the defendant knew or could reasonably foresee that there would be 1,000 or more marijuana plants being manufactured. The second issue is whether there is sufficient evidence that the handgun was... Well, when you say foresee, foresee at what point in time? Before he got there, after he was walking around the field? At what point does he have to foresee it? Well, I think all of the elements have to come together at the same point, so not before he came, certainly, but at the time when he was at the grow site. Well, there isn't so much foresee as be aware of. Yes. A contemporaneous impression. Yeah, I mean, if he's at the grow site, how could there be an issue about foreseeability? I don't understand your... Well, I think the manufacturing of a drug takes a certain amount of time. Well, we're talking about the plant. Yes. So you know the plant, you know, once it shoots out of the ground, there's a plant. There's a plant, and then it takes some processing to dry the marijuana and to... His claim amounts to saying, look, I was there, but I wasn't really there, and I didn't know what all was going on over there. Well, our specific claim on appeal is much more particular than that. Our claim on appeal is that he did not realize that there were more than 1,000 plants or more, which obviously governs the 10-year mandatory minimum that was imposed in this case, the minimum sentence. Without that portion of the jury verdict, he is not subject to the 10-year mandatory minimum and instead is subject to a guideline range of 91 to, I believe, 107 months. Now, at trial, you stipulated that there were over 7,000 plants. That's correct. All right. And your client's defense was duress, wasn't it? That is correct. So on appeal, though, you're switching a little bit from what your defense was at trial. There is a different focus, yes, Your Honor. Well, was there any focus at all at trial on what you're arguing now? I don't believe that the defense lawyer emphasized that fact at closing argument. I would agree. Okay. And so I guess I want to make sure I understand your argument and how it relates to the sufficiency of the evidence. So one of the elements of the crime is that the defendant knew or could reasonably foresee that 1,000 or more plants were being manufactured. The jury rendered a verdict on that issue. And he was at the grow site for at least 25 days. I think there was some discrepancy between different people, but at the very minimum it was 25 to 30-plus days. And he would, if I recall from the testimony that was presented, he would enter the garden to provide the other men cigarettes, is that correct? I think that's an important issue, and when you read the transcripts. Well, is that correct? There wasn't a testimony by him, I think, that said he would go into the grow area during that time to provide the other men cigarettes. I mean, his duties were that of a cook in which he was given a gun, correct? Yes. Okay. And to, well, I guess there's another question here that you're going to get to with respect to that. But so he entered the grow area. He did. He entered the grow area. It's very unclear from his testimony how many times he did that. Okay. It could be once. So what is your argument? I want to. Well, the argument is that there is no evidence in this record that at any point in time was the defendant in the location where the officers were when they saw it was immediately apparent that there were thousands of plants. I'm not sure there would have to be any evidence. He's there for like a month. And suppose he had testified, but I never went over the ridge to see what was there. Why would a jury have to believe that? A jury would not have to believe that. Well, as a result, how do you make a sufficient evidence? The only standard that they have to meet is, is there enough evidence for a reasonable jury to conclude? And frankly, if he was there for a month, I concluded it wasn't a matter of what he said. But you have to look at the totality of the record. And this record is very replete with testimony from both the defendant and the officers that it was very, very steep, that the cook site where he was at most of the time was completely blocked from the sun. But didn't the officers testify, I mean, something to the effect that it was very apparent upon when they entered the site that there were thousands of marijuana plants? There was no enter marijuana site. But where he was in relation to that, I mean, from what I saw what the testimony was, it seems like it was very apparent upon entering that area. Well, where they entered, and when you read that testimony, as I have done many, many times, Your Honor, it is very unclear where they were when they, when you say they entered the site. This is a forest. This is a huge. Yeah, but aside from that, as you said, there's testimony that the defendant himself went to the grow area. Yes. At least once. I think the jury could infer several times. And when you go to a patch where several thousand plants are going, even once, I think you can infer from that that he knew there was a thousand or more plants. Your Honor, there was sufficient evidence, isn't it? It might not be the best, but it's sufficient. There were two sites. There were two gardens. One garden had about 200 plants. The other garden had about 6,800 plants. There was no indication from his very brief statement about bringing cigarettes to the growers which garden he was at. Moreover, the officers, well, on that point, even if it were the larger site, there was no evidence that he stopped to make an estimate of the number of plants there were when he's being forced to bring cigarettes to the growers. I think the really crucial aspect of the argument on the drug case is that the officers were in the garden when they made their estimation that there were immediately apparent the number of plants, they said. The evidence here is there is no evidence that he was at that location ever during the month-long period. We know he was nearby for a month, and I'm not sure what more is needed than that. Well, I would say that to abide by the requirement that there must be evidence beyond a reasonable doubt that when the record is replete that these are very horrendous vegetation all around, that there has to be more evidence that the defendant, at least at some point during this 30-day or 25-day period that he was up there, at some point that he was at that location. There is none in this record. In fact, the record is undisputed that the defendant was arrested 50 to 75 yards away from the location where the officers made their observation, and the evidence is replete that he was below the officers when they found him. And so I don't think that this record could fairly be read to say, oh, well, if he is down there 50 to 75 yards away below the grow site, that at some point during the 25 days or 30 days he was somewhere in the area that allowed him the vantage of seeing whether there are 1,000 plants. Kennedy, you said you had two points? Yes. What do you want to say about the second one? Okay. As to the gun charge, the government points to four factors that support the – they believe supports the conviction, that the defendant was in proximity to the garden, that he was crouching down on the trail below the officers, that he was carrying a handgun, and that growers often arm themselves. This is a in furtherance of requirement? Well, it's in relation to. In relation to. Carrying in relation to, possession in furtherance of. So we're at the first level, carrying in relation to. And as this Court has said many times, proximity alone is not enough, and that growers arm themselves. What do you testify to as to why he was given the gun? He testified that he was given the gun at times when he was alone to protect himself from large animals. Isn't that alone enough? No. Because they needed to cook. It helps them grow the marijuana if they could eat meals. So they want to cook to remain alive? That is simply – Isn't that – isn't that in relation to the grow – grow – No. That's in relation to cooking. And there's no federal law that prohibits cooking. Okay. That's an integral part of, you know, an outpost camp, isn't it? Your Honor, that is simply too attenuated to have a conviction for a mandatory five years' imprisonment. Why is it attenuated? I mean, you could argue that the person who puts gas in the car, if he knows the person is going up to a marijuana grower, oh, well, you're, you know, in relation to – Nobody's living – he's living in this campsite. All the people who tend to the growing, they live and eat there, and this is their only source of food. So they got to have a cook, you know, in order to carry on the operation. It's integral to the operation. Isn't that enough? That alone? No, Your Honor. That's far too attenuated for a mandatory minimum sentence. So that's your case. That evidence is too attenuated and there's no other evidence. That is correct. And the other, though, theory for giving him the gun, I think that you were trying to assert, is that it was to – he was to kill the animals that might come. Well, to protect it from the animals, to shoot in the air or whatever. And there were two snakes that were found in the garbage disposal or the waste area. There were wild animals in the area. I mean, that's – I think that's undisputed. Okay. Thanks. I'll reserve the rest of my time. We've taken you over, so I'll give you a minute as well. Thank you. Good morning. May it please the Court. Kevin Rooney on behalf of the United States. I was one of the trial counsel at the trial. The standard of review for the sufficiency of the evidence is that the inferences are drawn in favor of the verdict. And the next question is whether any reasonable jury could find beyond a reasonable doubt that the elements were proved. The record established that the defendant knew or could reasonably foresee the thousand plants. And that's primarily at Supplemental Excerpts of Records 21 to 23. The defendant was found on a trail, that's Supplemental Excerpt of Record 12. That trail led directly to the marijuana garden, the major marijuana garden. It was about 50 yards away, that's Supplemental Excerpt of Record 22. The plants were obvious. They were planted in rows. The officers immediate impression were there were thousands of them. And that's Supplemental Excerpt of Record. Well, does the record show whether or not, you know, from the spot where the defendant was found or arrested or apprehended, from that spot, could you see the grow field? I believe the record says you cannot. You cannot. Here's a well-established trail. You go 50 yards, and then there's the thousands of marijuana plants. Now, the 50 yards is like over a hill, isn't it? My impression. No, the field is not visible from the camp. Is that right? Right. And my impression, I don't think the record is perfectly clear, there is a topographical map in the record, is that it's directly downhill. I disagree with counsel about the defendant's uphill-downhill relation to the camp. I think the record is very clear, Supplemental Excerpt of Record 42. The ground generally slopes away. The officers are coming in from uphill. The defendant is downhill of them, and the marijuana garden is even further downhill. Then if you go, you know, the ---- Well, whether it's uphill or downhill, the marijuana field is not visible from the campsite. Is that true? That's not true. What I was saying is the ---- Is it visible? Is there testimony that it is? Yes, there is. And what that testimony is, is the Supplemental Excerpt of Record 1. It's a diagram. And then there's explanations of the diagram at the Supplemental Excerpt of Records 25 and 26 in the count. There's 6,898 marijuana plants. Let's call it 6,900. The camp is within, is right on the edge of the marijuana, of the marijuana garden, the major marijuana garden. There's one with 6,900 plants. There's one with about 250. It's on the edge of which one, the bigger or smaller plant? The big one. The bigger plant? The big one. So that's the evidence. The man is coming uphill towards the officers. Where he stopped is 50 yards from where the marijuana starts. The marijuana is immediately obvious if you go there. The camp is right on the edge of that marijuana garden. And as the court pointed out, the defendant was there for roughly 25 to 30 days. He also brought cigarettes to the other men while they're working in the garden. One time. Excuse me? One time he did that. It's unclear. It says he brought them cigarettes. Whether it's one time, multiple times. And counsel is correct. It's not clear which garden it is. From supplemental excerpt of record one, you can see that the major garden is right next to the campsite. The campsite is within the edge of it. It would make sense that if they're going to shout to this man and bring him cigarettes, they're probably in that bigger garden, but that's an inference. I think we come back to all the inferences are drawn in favor of the verdict. To address the count, the court's other question, foreseeable when, certainly during the crime, I think the difference between foreseeable and actual knowledge is somebody looks at all those plants. They can see there's a whole lot. The government's burden is not to prove that the man actually counted them and knew there's more than 1,000, that it was foreseeable when you see them that there's more than 1,000. As to the carrying of ---- I think that would be correct, but, you know, what your opponent, Mr. Porter, focused on was the evidence that he was in a position to see them, the evidence. I don't ---- There is no direct evidence that this defendant actually saw them other than he went to the garden and he's living in the garden. He's not living in the garden. He's living in the camp. He's living in the camp that's on the edge of the garden. And the question is whether that's sufficient to support the verdict. At this level of review, that's ---- You mean the portion of work that says knowledge of 1,000 or more. Right. So if the camp is here and, you know, the marijuana grove starts right here and I see this right here, I might see, you know, a dozen plants or so. I have no idea how many miles out it goes or yards or acres, right? If you stand there and find yourself and never walk in there, you might not have any actual knowledge. That's true. And we don't know whether he walked in there or not, according to the evidence. No, he brought cigarettes to a marijuana garden. I know, but it could be, you know, I could be here and I could give it to you right here at the edge of the garden. That's possible. That's certainly possible. The evidence, what's the evidence that supports, let's say, this would be the clearest evidence, that he's, you know, he was in a position to see that there were 1,000 more plants. Okay. That evidence is that he was in a position, is he was literally living on the edge of that garden. But he didn't have any, you know, I'll call them agricultural duties, right? No, I think he had worked in the agricultural field. I thought he was a cook and took care of the camp. I meant his previous employment. Well, I'm talking about with respect to the marijuana plants. His version of events, which, of course, the jury could believe or disbelieve, was all he did was cook and do laundry. He was never even asked to do anything else. Right. The government doesn't concede that that's absolutely accurate. There was no evidence. Well, whether it does or not, there's no evidence otherwise that supports that. Correct. There's no direct evidence one way or another. The law enforcement found him 50 yards from the marijuana garden. All right. So just encapsulate for me the best evidence that, you know, you could infer, at least, that he knew there were 1,000 more plants. He's living on the edge of the marijuana garden that contains approximately 6,900 marijuana plants for at least 25 days. He's found on a trail that goes directly to that marijuana garden 50 yards from it. That's the best evidence. And then the other thing is that he brought the cigarettes to a marijuana garden. It's unclear which marijuana garden it is. Was this 1,000 or more requirement contested before the jury? No. I didn't perceive it as contested. The government, of course, has to establish that element, but I didn't perceive it as contested. And the closing argument was along the lines you're making now about, you know, that he knew that there were 1,000 plants? The closing argument, as it appeared, was that the defendant was subject to duress or coercion. Yeah. That was the case. That's on his side. Correct. On your side, I mean. Sure. We went through the elements. Including the 1,000 or more plants. Of course. As to the weapon, I believe the court has hit on it very well. Again, the standard of review is all inferences in favor of the verdict. The offense has happened if the weapon is carried, is facilitating, or has the potential to facilitate the offense. Obviously, the weapon can protect the growers and the grow itself from animals or raiders or law enforcement. It was available to a system. That's the test in Areola and Smith. The weapon posed a danger to anyone who happened by that garden, to law enforcement. It's a very dangerous thing. That's why we have this statute. I think I've presented the government's case. I'd be happy to answer any further questions or I'd just conclude. None for me. Thank you. That's it. Thank you. Order. It is incorrect that the defendant had any experience whatsoever in agriculture. He spent most of his life in Los Angeles working for an asbestos removal company. He testified he was totally unfamiliar with the forest, anything rural. This man grew up in Los Angeles and he lived there most of his life. Then he lived in Gustine near Modesto. That brings out the larger point that these officers, when they testify, oh, it's immediately apparent to us the number of plants, those officers are educated. Those officers have experience. Deputy Isaacs had 12 years' experience and Officer Prynne had two years' experience out in the forest doing marijuana eradication. My client, on the other hand, no formal education whatsoever and a city man. There was no evidence that the number of plants could be seen from the campsite and I would point the court to supplemental excerpts of Record 43 where I believe it was Officer Isaacs testifies that he was in the garden when he made this approximation of the number of plants, not at the campsite. And my final point is I encourage you, as counsel for the government does, to look at SER 1. That's the topographical map. And you will see that the lines there are very closely drawn. What that means is these areas are very, very steep. And that goes throughout the the that's confirmed throughout the testimony as well. So my client, an elderly Hispanic man with no formal education and no criminal history, and because he is uneducated and gullible and desperate, he was tricked into cooking for a marijuana grow. And for that he will do a very, very long time in prison. You say elderly. I thought he was 54. 68 years old is what the district court judge found in the sentencing transcript. His PSR says 54. Well, Judge Wanger specifically said in the sentencing transcript that this man is a 68-year-old man. I believe his sister made that statement at the sentencing proceeding, Seferina. He will do a very, very long time in prison. That is not a question. We submit there was insufficient evidence to support the sentence on the drug count and the conviction on the gun count. And we ask that this Court remand the case for resentencing without the mandatory minimum period of 10 years. Let me ask a question. Yes. I'm not quite sure what understanding you and Mr. Rooney have reached on his appeal. I mean, just that you're going to submit it without argument? Is that what it amounts to? Are you stipulate to the disposition or what? We stipulate to the disposition, Your Honor. The United States Supreme Court in Abbott was very clear that these sentences have to be run consecutively. So you agree the sentence should be vacated? Yes. Under that Supreme Court case and remanded. Well, we would agree if the Court rejects our arguments that the conviction is invalid for insufficiency of evidence. If the conviction is vacated, then you don't have to sweat the sentence. Exactly. All right. I just want to be sure what your understanding is on that. Thank you. Thank you, Judge. Thank you. We thank both counsel for their helpful arguments. The case just argued is submitted.
judges: Tashima, Clifton, Murguia